## ROY HUGHES v. MISSISSIPPI RIVER & BONNE TERRE RAILWAY, Appellant.

In Banc, July 18, 1925.

1. **NEGLIGENCE: Section Men: Lookout for Own Safety.** The rule that it is the duty of section men to look out for themselves applies when they are at work along and upon the railway track, but is inapplicable to a section man being transported by a hand-car from one place of work to another place of work. Where the section man is being transported on a hand-car the rule that he must look out for his own safety by avoiding approaching trains is no

Hughes v. Miss. River & Bonne Terre Railway.

more applicable to him than it is to other persons lawfully upon the track.

2. ———: ———: ———: Practice: Custom: Curve in Track: Rule: Warning. The rule of the company requiring delayed trains and trains running extra, in approaching curves where the view is obstructed, to sound the whistle, and an established custom to sound the whistle at the particular curve at which the collision between an approaching train and the hand-car on which plaintiff was being transported, are available to a section man on said hand-car; and a motion to strike out allegations in the petition that there was a well-established custom to sound the whistle at such curve, that the view was obstructed and that defendant negligently failed to give the signal warning, should be overruled; and there being evidence tending to establish such allegations, a demurrer to the evidence should likewise be overruled; and an instruction telling the jury that if there was a custom of blowing the whistle of a train approaching said curve and that defendant failed to blow it, and if the plaintiff section man being transported on the hand-car relied on such custom, then defendant was guilty of negligence and plaintiff is entitled to recover, is properly given.

3. ———: ———: Sending Forward Flagman: Ordinary Care: Rule. Ordinary prudence or ordinary care is a matter to be determined from the circumstances. Where the petition alleges that by reason of the negligent failure of the foreman of the section crew to exercise ordinary care for the safety of the plaintiff section man riding on the hand-car, by sending forward a man to see whether the track was clear beyond the dangerous curve into which the car was about to be run, and by reason of his negligent failure to observe and follow the company's rule, which required him to take such precaution, plaintiff was struck, and the rule declared that where there is not a clear view far enough ahead to insure absolute safety the foreman of the section crew must see that a flagman is sent out with stop signals, an instruction telling the jury that, if plaintiff was ordered to ride to the next station on the section car and he entered the car under the control of the foreman, and if it required ordinary care and prudence on the part of the foreman to send a man ahead to see whether the track was clear and he failed to do that, then the foreman was guilty of negligence, was proper, since the rule itself expresses the defendant's view of what is reasonable care under such circumstances, and recognizes that it was his duty to send a man ahead.

4. ———: Practice: Propriety of Instructions: Raised by Demurrer. A consideration of the demurrer to the evidence, the motion to strike out parts of the petition, and objections to the introduction

309 Mo. —36.

ʻof evidence tending to show the facts upon which the main instructions are based, may involve a consideration of ʻthe same questions which determine the propriety of giving such instructions.

5. ———: Section Men: Lookout for Extra Train. The servants of a railroad company, operating an extra and unexpected train on a track where a section crew, with knowledge only of scheduled train movements, had previously been ordered: to move a hand-car, do not have a right to expect a track free of the presence of such properly moving hand-car, but are under obligation to keep a lookout for section men being transported on the hand-car, and particularly so where the section men on the hand-car, without knowledge of the extra train, are about to enter an obscured curve. The rule requiring section men to look out for their own safety does not apply to such a situation. The proper rule is that servants operating unannounced extra trains be required to be on the lookout for section men known to be or likely to be in places of peril and unable adequately to protect themselves.

6. ———: ———: ———: Rule of Company. Notwithstanding no rule of the company required trainmen to keep a lookout in obstructed cuts and curves, such duty arises by operation of law where there is such a cut and the train is running extra and the section men being transported on a hand-car have no knowledge of it. Besides, a rule which requires employees when running extra and delayed trains to sound the whistle when approaching curves where the track is obstructed is a recognition by the company that such employees have no right to expect a clear track for unannounced extra trains approaching an obscured curve.

7. ———: ———: ———: Dangerous Speed. Trainmen operating an unannounced extra train are guilty of negligence, if without keeping a lookout for section men reasonably to be expected to be traveling upon a hand-car, they run their train around an obscured curve at an excessive and dangerous speed, and thereby imperil the safety of the section men.

8. ———: ———: Reporting Extra Train. Ordinary care for the reasonable safety of section men, ordered transported by hand-car along the railroad track, requires that the telegraph operators and station agents be notified of the time of an extra train, in order that the section men may be informed by or may obtain information from said operators or station agents of such extra train and its time; and it is negligence for the railroad company to send out an extra train upon which section men have been ordered to transport themselves by a hand-car, without informing either the telegraph operators or station agents and without any notice to the section crew that such extra train will pass over the track at the same time their hand-car will.

9. ———: Instruction: No Exceptions. If no exceptions were saved by appellant to the giving or refusal of certain instructions, they are not for consideration on appeal.

10. ———: Evidence: Immaterial. The exclusion of evidence which could not have affected the result is not reversible error. Where it is·apparent from all the testimony that plaintiff was totally and permanently disabled, the exclusion of evidence touching certain of his physical movements after the injury is not reversible error.

11. ———: Indemnity: Counterclaim: Statute. Section 8661 of the Federal Employer's Liability Act, declaring that in any action brought against a common carrier for·personal injuries to an employee the carrier "may set off therein any sum it has contributed or paid to any insurance, relief or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury," does not authorize a counterclaim upon which a separate judgment may be rendered. The carrier may only set off against the claim of the injured employee named expenditures "for indemnity and relief furnished the injured plaintiff, such as hospital bills, doctor bills, nurse hire, medicine, clothing and dressings."

12. ———: ———: Set-Off: Instructions: General Verdict for Plaintiff. Where defendant in its answer to the action for personal injuries pleaded as a set-off certain expenditures for surgical operations, medicines, nurses and hospital care for its injured employee, and the court instructed the jury to allow said set off if they found certain facts, and they returned a verdict for a definite amount for plaintiff, the presumption is that they followed the instruction, and their failure to make a specific finding or' allowance of the set-off is not reversible error.

13. ———: Excessive Verdict: $21,168. Plaintiff, a section man employed by the defendant railroad, had no education which would enable him to engage in business or in any profession. The injuries disabled· him from getting about and, at the time of the trial more than two years after the accident, he suffered from pain and loss of sleep, and was emaciated and ill. The evidence tends to show that he is a complete and permanent physical wreck. He was earning $75 to $80 per month, was 34 years of age and had a life expectancy of 32.5 years. He bases his action upon the Federal Employer's Liability Act, and the defendant set up a set-off in the amount of $852 for hospital care, nurses, medical attention and surgical operations, and· the court instructed the jury that, if they found certain facts, to allow such set-off, and they are presumed to ,have followed the instruction, although they made no

specific finding upon the set-off. *Held*, that a general verdict for $21,168 cannot be said to be excessive. [Distinguishing Crecelius v. Railroad Co., 284 Mo. 26.]

Corpus Juris-Cyc. References: Appeal and Error, 3 C. J., Section 818, p. 919, n. 34; Section 819, p. 927, n. 55; 4 C. J., Section 2717, p. 717, n. 76; Section 2994, p. 1010, n. 7; Section 3039, p. 1056, n. 66 New. Damages, 17 C. J., Section 408, p. 1091, n. 85. Master and Servant, 39 C. J., Section 572, p. 456, n. 97; Section 573, p. 458, n. 1; Section 576, p. 460, n. 16, p. 461, n. 20; Section 586, p. 470, n. 81; Section 1093, p. 875, n. 31 New; Section 1095, p. 878, n. 49, 50, 53; Section 1303, p. 1107, n. 12; Section 1348, p. 1166, n. 61 New; Section 1444, p. 1263, n. 33. Negligence, 29 Cyc. p. 428, n. 75. Trial, 38 Cyc. p. 1691, n. 48.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing*, Judge.

AFFIRMED.

*Politte Elvins, W. E. Bennick* and *P. S. Terry* for appellant.

(1) The engineer is not required to keep a lookout for trackmen in the ordinary operation of trains. The engineer has a right to assume that trackmen, although in a place of danger, will, in the exercise of their duty, remove themselves from such place of danger before the train reaches them. Gabal v. Railroad, 251 Mo. 259; Nivert v. Railroad, 232 Mo. 647; Kirkland v. Bixby, 282 Mo. 470. (2) It is not the duty of a railroad company to notify section men that extra trains are to pass over the road, but it is the duty of the section men to be on the lookout for the same and to keep out of the way. Woods v. Railroad, 187 S. W. 11; Gabal v. Railroad, 251 Mo. 268. Because section hands may be scattered along the railroad track from one station to another does not deprive defendant of the right to rely upon a clear track, and for this reason such employees are bound to look out for their own safety. The rule as to employees is different from the knowledge applied to a passenger or a stranger. Degonia v. Railroad, 224 Mo. 592; State ex rel. v. Ellison, 271 Mo. 468; Kirkland v. Wabash Receiver, 222 S. W. 462; Evans v. Railroad, 187 Mo. 515; Nivert v. Railroad, 232 Mo. 643. (3) The general law of this State holds: First, that the trackmen are under duty to look

out for their own safety. Second, that an engineer is not required to keep a lookout for trackmen in the ordinary operation of its trains. Third, the engineer has the right to assume that trackmen, although in a place of danger will, in the exercise of their duty, remove themselves from such place of danger before the train reaches them. Fourth, it is only after the engineer discovers that a trackman is oblivious to his danger and is not going to retire to a safe place that the engineer is obliged to take steps to protect the trackman. And, fifth, the defendant is not liable for the failure of the engineer to ring its bell or sound its whistle to warn section men. State ex rel. v. Ellison, 271 Mo. 463; Degonia v. Railroad, 224 Mo. 564; Cahill v. Railroad, 205 Mo. 409; Rashall v. Railroad, 249 Mo. 509; Gabal v. Railroad, 251 Mo. 257; Morris v. Railroad, 184 Mass. 368; Whittlesey v. Railroad, 77 Conn. 100; Lynch v. Railroad, 159 Mass. 536; Clancy v. Railroad, 192 Mo. 615; McGrath v. Railroad, 197 Mo. 97; Evans v. Railroad, 178 Mo. 508; Loring v. Railroad, 128 Mo. 349; Sharp v. Railroad, 161 Mo. 214; Ring v. Railroad, 112 Mo. 220; Aerkfetz v. Humphreys, 145 U. S. 419. (4) The foreman is under no duty to warn section men concerning danger which the foreman himself does not know. Jackson v. Railroad, 104 Mo. 448. The foreman is under no duty to warn one of his crew of dangers incident to common employment. Ring v. Railroad, 112 Mo. 220; Evans v. Railroad, 178 Mo. 508. The foreman owes no duty to warn the section hand that a train is coming even if he sees it. Evans v. Railroad, 178 Mo. 513. (5) Plaintiff's Instruction C is not predicated upon any rule or custom of the defendant requiring that a man be sent on foot ahead when approaching a cut or curve. Absent such rule or custom the law does not require the section foreman to warn section men that a train is approaching. Evans v. Railroad, 178 Mo. 508; Carter v. Railroad, 249 S. W. 124. There is no evidence that the operatives of Car No. 100 either knew or in the exercise of ordinary care could have known that plaintiff was likely to be at or near the cut wherein he was injured.

An instruction which is not predicated upon the evidence is erroneous. Riley v. City of Independence, 258 Mo. 671; Wellmeyer v. Transit Co., 198 Mo. 527. (6) Considering the earning capacity of plaintiff, the damages awarded by the jury were excessive. Crecelius v. Railway, 284 Mo. 44. (7) Where the court failed to determine the issues on the counterclaim, and it is apparent from the findings and record presented that the court or jury failed to pass on the issues raised on all the causes of action stated in both pleadings, this action constitutes reversible error. Marshall v. Armstrong, 105 Mo. App. 234; Henderson v. Davis, 74 Mo. App. 1; Hitchcock v. Baughan, 44 Mo. App. 42; Gawk v. Millowick, 203 S. W. 1006; Thresher Co. v. Speak, 167 Mo. App. 470; Disbrow v. Storage & Fuel Co., 170 Mo. App. 585.

*Wm. R. Schneider* for respondent.

(1) Appellant states substantially correct general rules of law, but said rules and the authorities cited are not applicable to the case at bar, because the facts are different, in that in the case at bar an ordinary train operation on the ordinary clearview track was not involved. Winkler v. Terminal Ry. Assn., 227 S. W. 627; Sullivan v. Mo. Pac. Ry. Co., 97 Mo. 113; Hardwick v. Wabash Railroad Co., 181 Mo. App. 173; Greenwell v. Ry. Co., 224 S. W. 404. (2) This court has specifically approved the foregoing theory in the recent case of Yokum v. Lusk, 223 S. W. 53. To the same effect is Moore v. Railroad, 85 Mo. 588. The case of Degonia v. Railroad, 224 Mo. 592, does not apply, for the reason stated in Walker v. Wabash Railroad Co., 183 S. W. 636. In the case at bar the evidence was all to the effect that the operator of Car 100 had reason not to expect a clear track at or near the point of collision. (3) Appellant states that "plaintiff's Instruction C is not predicated upon any rule or custom of the defendant requiring that a man be sent on foot ahead when approaching a cut or curve." What the purpose of that statement is, in view of the facts dis-

closed by the record, we are at loss to know. We call the court's attention, first, to plaintiff's petition, and next to appellant's Rule 907, referring to what section foreman in charge of section crews and section cars must do. Appellant's foreman, Miller, admitted that he did not send a flagman forward at the obscured curve where the collision occurred, but he did send one forward at the previous curve they passed. Respondent testified to the same effect and there was no testimony to the contrary. We next call the court's attention to Instruction C. See Allison v. Railroad, 129 N. C. 336. (4) Appellant's point, to the effect that "the law does not require that the operatives of a train maintain a lookout for section men on the track," is not true where, under the facts and circumstances of the particular case, such operatives have reason not to expect a clear view or a clear track. A practically unbroken line of Missouri decisions recognize in one form or another the above-mentioned modification. And it will be noticed by the Missouri decisions that wherever the general rule was stated as the appellant states it, it has been in a case where the train operatives had reason to expect a clear track, and the court so states and mentions the fact that consequently a warning by train operatives was not necessary or it expressly recognizes exceptions to the above-mentioned general rule, as in the case of Kirkland v. Bixby, 282 Mo. 462. (5) Appellant's point to the effect that, considering the earning capacity of the plaintiff, the damages awarded by the jury were excessive, is not supported by the evidence nor the authority cited by appellant. (6) It is apparent from the findings and record that the jury did pass on the issues raised on all the causes of action stated in both pleadings and allowed the full amount of the set-off claimed by the appellant. Federal Employers' Liability Act, sec. 8661; R. S. 1919, sec. 1233; Cosgrove v. Strange, 194 Mo. App. 14; Nowell v. Mode, 132 Mo. App. 243; Lindsey v. Nagel, 157 Mo. App. 128.

BLAIR, J.—Action for personal injuries under the Federal Employer's Liability Act. Respondent prevailed below and was awarded judgment for $21,168. An appeal was granted to the defendant.

The case fell to Division One. An opinion was there written by one of the judges, wherein the judgment below was reversed and the cause remanded for retrial. Two of the judges did not concur, and the case was transferred to the Court en Banc. Since the majority of this court concur in the greater part of such divisional opinion, we will avail ourselves of it, in so far as the same is helpful, appropriately indicating substantial departures therefrom.

"Plaintiff, at the time of his injury, was riding with his foreman and other section men upon a motor handcar, which car collided with and was struck by Car 100 coming from the opposite direction at a point near a public-road crossing, whereat there was such a curve in the track, and the cut wherein the track was placed, that the view was obstructed. Car 100 was an automobile so constructed that its wheels would run upon railroad tracks and, at the time of the accident, was running extra, that is, upon no schedule time.

"Counsel for appellant, in their statement, have outlined the petition in substance as follows:

" 'This action was tried on an amended petition filed January, 1922, wherein the plaintiff alleged that defendant was engaged in United States commerce; that on or about the 6th day of January, 1920, while plaintiff was employed as a section hand repairing the tracks near Festus, Missouri, it was his duty to travel on said railroad by means of a small motor vehicle.

" 'Plaintiff also alleges that the foreman negligently informed him and the other members of the crew that the track was clear, when the foreman knew, or by the exercise of ordinary care could have known, that the track was not clear. He alleges that he relied upon said information received from said foreman and proceeded south on said vehicle. That, while exercising due care

for his own safety, the vehicle upon which he was riding was struck by an automobile on defendant's track running northwardly.

" 'He further alleges that said vehicle which struck plaintiff was being driven by defendant's master mechanic, pursuant to defendant's orders and business, in a careless, reckless, negligent manner, at a high, excessive and dangerous rate of speed, with reckless disregard to plaintiff's life and safety, whose presence was then known by defendant, or by the exercise of ordinary care could have been known by the servants of defendant who were operating said automobile and that the same could have been known in time to have prevented the collision between the vehicles.

" 'Plaintiff further states that the place where he was struck was about two hundred and fifty feet north of a point where the railroad track crosses a public highway at Plattin station; that opposite the place where the collision took place there was a high embankment or cut, and that this cut obstructed the vision between the place where plaintiff was and the public crossing.

" 'He further alleges that there was an established and uniform custom which required defendant's agents and servants to sound a signal of warning on passing said crossing, grade, cut and curve. He further alleges that the defendant negligently failed to give any signal or warning of the approach of said automobile while passing said crossing, grade, cut and curve.

" 'He further alleges that defendant's foreman drove or caused to be driven the vehicle upon which plaintiff was riding up to said curve and embankment when the foreman knew, or in the exercise of ordinary care could have known, that said automobile train was coming or likely to be coming upon the obscured part of the track. By reason of the negligence of defendant's foreman in failing to exercise ordinary care for plaintiff's safety by sending a man forward to see if said track was clear beyond said curve and embankment, and by reason of the foreman having negligently failed to observe and

follow the rules of the company, plaintiff was struck; that defendant negligently failed to use ordinary care in failing to enforce rules for the safety of its employees.

" 'Plaintiff further alleges that defendant negligently operated said automobile without having notified defendant's station agents, telegraph operators and section men at the stations along its track that said special car or automobile was on said track and that ordinary care required that said telegraph operators, station agents and section men be notified.

" 'Plaintiff further alleges that the men in charge of said automobile negligently failed to maintain a lookout for track workmen, who, said men in charge of said automobile knew, or by the exercise of ordinary care could have known, were on said track, and that if they had exercised ordinary care to maintain such lookout, they could have avoided the injury to plaintiff. That, as a result of said negligence of defendant, there was a collision by the two cars and plaintiff was thrown with great violence from the vehicle upon which he was riding, injuring his right leg and breaking his left leg; that he was permanently injured; that his right forearm was wrenched and his wrist broken; that he was injured internally, was compelled to suffer pain and lie in a hospital and has been totally incapacitated for work; has incurred medical bills, hospital bills, has lost time and will incur hospital bills and lost time in the future.'

"To the petition ·a demurrer was filed, but it was overruled, and defendant answered over. Motion to strike out stated portions of the petition was filed before the answer, but it met the fate of the demurrer. Of the answer, the appellant says:

" 'Upon such motion to strike out being overruled, defendant filed answer admitting the incorporation of the company and containing:

" 'First, a general denial; second, a plea of contributory negligence; third, a plea of specific negligence in that defendant negligently rode with his back toward the front of the motor hand-car; negligently failed to

look out and see the motor train when plaintiff, in the exercise of ordinary care, could have seen said motor train in time to have avoided the injury, and that plaintiff negligently failed to jump off the motor hand-car and get out of the way of the motor train; fourth, a plea of assumption of risks, and fifth, a counterclaim alleging that the defendant had from the 6th day of January, 1920, at the time of the suit, furnished hospital bills, doctor bills, nurse hire, physicians, clothing, feed and dressings in the sum of eight hundred and fifty-two dollars.

" 'The reply was a general denial to all affirmative items in the answer.' . . .

"The assignments of error cover the matter of overruling the demurrer, the overruling of the motion to strike out portions of the petition, the admission and rejection of evidence, the giving and refusing of instructions, the overruling of the motion for a new trial, and lastly, the excessiveness of the verdict, and the failure to find upon the counterclaim.

"The judgment for plaintiff was in the sum of $21,168. The assignments of error, although numerous, are well within the motion for new trial. This suffices to outline the case, and thus far counsel are in full accord. Wherein they differ can be noted in the course of the opinion under the proper points.

"I.  The demurrer to the testimony can well be considered along with other instructions in the case. The same is true of the motion to strike out portions of the petition. A ruling which determines the propriety of the principal instructions given by the court upon request of plaintiff, will, of necessity, determine the matter of the demurrer to the evidence and the motion to strike out certain portions of the petition (as well as rulings upon admission and exclusion of testimony in support thereof).

"Defendant's learned counsel, both upon the demurrer to the evidence and the motion to strike out portions of the petition, raise but the one big question, that

is, the general doctrine that it is the duty of a section man to look out for himself. We have such general rule when the section man is upon and along the track doing work thereon. This because he can step back from his work and put himself in a place of safety when there is a passing train. The petition pleads, and the evidence shows, that plaintiff was not upon the tracks doing track-men's work at the time of his injury. He was being transported from one place of work to another place of work. This, plaintiff contends, makes this general rule of law inapplicable to his case. He relies upon specific negligent acts committed whilst he was not engaged in actual work in and upon the tracks. There were four of these specific acts of alleged negligence submitted by four separate instructions. The submission upon the four, by the four separate instructions, amounts to an abandonment of all other charges in the petition, if others there were.

"It was admitted that the parties were engaged in interstate commerce at the time of the injury and hence the instruction giving upon that question was proper. The other four instructions, and correlated matters, we will consider in the following paragraphs:

"Plaintiff and his crew left Festus station to go southward upon defendant's railroad for the purpose of cleaning switches and salting the same. The latter being done, as would appear, to keep the ice from accumulating in the switches. He would work at a switch and then be transported to the next one by a motor car operated by the foreman of his crew. These and other particular facts must be considered in determining the propriety of the four instructions and the other correlated matters.

"II. There was no error in giving Instruction B for the plaintiff. Appellant, from whose statement we have quoted, properly outlines this instruction

Duty for Own Safety.

thus:

" 'That, if there was a custom of blowing a whistle at a crossing and that if defendant failed to blow the whistle at the crossing and curve there, and

if plaintiff relied on the custom, then defendant was guilty of negligence and plaintiff was entitled to recover.'

"The petition pleaded this custom and defendant moved to strike out this portion of the petition for the reason that it was the duty of a section man to watch out for his own safety. The demurrer to the evidence likewise goes to the sufficiency of the evidence under this point. So, as said, all three questions are solved by the one ruling. That is to say, if plaintiff was entitled to this instruction, then the demurrer to the evidence was properly overruled, and the motion to strike out, so far as this point is concerned, was properly overrruled.

"First, there is evidence sufficient to show a custom to give warning at this curve owing to the dangerous character of the situation. That is to say, that trains or cars coming from the south gave a warning, not only on account of the public crossing (which had to be done at a stated distance from the public crossing), but an additional warning as the curve was reached that persons to the north of the curve might know that a train was approaching. The evidence of the plaintiff not only tended to prove a custom to give signals when rounding this curve, but further there was a rule which provided: 'When running extra and delayed trains they must sound the whistle as per rule (1) in approaching curves where the view of the track is obstructed; and if such curves be long, they must repeat the signal at intervals of a quarter of a mile until they are passed, or until the view is clear.'

"Neither the custom nor this rule has reference to the usual statutory signals for public crossings. Both contemplate the protection of persons who were lawfully upon the tracks and approaching the curve. Both the custom and the rule applied to section men upon their motor cars and traveling to their different places of work. The warning required by this custom and this rule is wholly different from the statutory signals for a public crossing and is given for a different purpose. The statutory signals are, as often ruled, for the benefit of persons going over the public crossings and there-

by liable to be struck by the trains. The custom shown and the rule shown required signals for those who might lawfully be on the tracks near such curves. The rule applied where trains or cars were being run extra, that is, not on a schedule time (Car 100 being run extra and not on schedule time), so that in failing to signal around this curve it violated both the custom and the rule. The custom shown was evidently the outgrowth of the rule. And the fact that there was such a company rule, tends strongly to show that a custom to give such signals existed.

"We are not unmindful of the general rule that section men must look out for themselves. [Kirkland v. Bixby, 282 Mo. l. c. 466, and cases cited.] This general rule must, of necessity, be subject to many exceptions. The cases cited in Kirkland's case are largely cases where the section man was at work upon the tracks, but Kirkland's case was not such a case. In that case we remanded the case because the evidence tended to show a custom which had not been pleaded. We clearly indicated that had there been an established custom to give notice of the approaching train, under the conditions named, then a failure to give notice would be actionable negligence. We remanded the case because the custom had not been pleaded. But in the instant case, not only was there such a custom pleaded, but the very rule of the defendant strongly supported the theory of a custom. Here we have a custom pleaded and proven. Instruction B was therefore correct. Not only so, but this being one theory upon which plaintiff could recover, the demurrer to the evidence was properly overruled. We need not note this demurrer to the evidence further.

"By this ruling the motion to strike out this portion of the pleading must likewise be overruled, as was done *nisi.* The general rule as to the duties of section men may be changed by the circumstances of the particular case. This may be done either by custom or by fixed rules of the company.

"III. Appellant thus outlines plaintiff's Instruction C:

" 'That, if plaintiff was ordered to ride south to Plattin station on the section motor car and that he entered the cut, and that if it required ordinary care and prudence on the part of the foreman to send a man ahead to see whether the track was clear, **Ordinary Care: Flagman.** and if the foreman did not do that, then the foreman was guilty of negligence and the verdict should be for the plaintiff.'

"Appellant contends that there is neither rule nor custom upon which to predicate this instruction and that, absent such rule or custom, there was no duty. The petition avers:

" 'And by reason of his negligent failure to exercise ordinary care for the plaintiff's safety by sending a man forward to see whether the track was clear beyond said curve and embankment and by reason of his negligent failure to observe and follow the defendant company's rule, which also required him to take such precaution, plaintiff was struck as aforesaid.'

"From the petition the plaintiff grounds this portion of his case, (1) upon the theory that the foreman of the crew did not exercise ordinary care to protect his men upon the car by failing to send a man forward at this place, and (2) that in this he failed to follow a rule of the company. So that, a rule of the company is pleaded. By Rule 907, with reference to the duties of foremen of section crews and their hand-cars, it is said:

" 'They must see that they are clear of the main track at least fifteen minutes before the time of the first and second class trains; that they are run with great caution at all times; that a constant lookout is kept for trains, and that where there is not a clear view of the track far enough to insure absolute safety, flagmen are sent out with stop signals to protect them; that when they are run at night a white light is displayed in front and a red light on the rear, and that they are never attached to trains.'

"It must be noted that the instruction is not based upon any rule, but upon the sole ground that ordinary

prudence required this thing to be done, that is, sending forward a man. Ordinary prudence or ordinary care is a matter to be determined from the circumstances. The foreman of the crew was running this car and, in a sense, was vice-principal while these men were being transported from one place of work to another. The rule says 'that where there is not a clear view of the track far enough to insure absolute safety, flagmen are sent out with stop signals to protect them.''

''This rule at least expresses the defendant's view of what is reasonable care. It is for the court to determine the pure legal question as to whether or not the defendant owed to the plaintiff a duty to send a man forward for the protection of the section crew. This duty cannot arise, except from a state of facts which takes the case out of the general rule, that section men must look out for themselves. By its rule, quoted supra, the defendant recognized that where there was not a clear track, there was a duty to send a man forward. What the defendant recognizes as a duty, the court will recognize as a duty. This because the workmen soon learn to rely upon what the corporation recognizes and concedes to be a duty. Upon this theory it should be ruled that Instruction C was proper. It simply announced an obligation which the defendant had explicitly recognized by its own rule of conduct. So, as to this, the demurrer to the evidence fails, as also does the motion to strike out that part of the petition.

''There is a shade of difference between the liability of the company as to the foreman of the section crew (which was involved in the case of Kirkland v. Bixby, 282 Mo. 462) and the members of the crew under such foreman.

''In the Kirkland case we were dealing with an injury to the foreman of a section crew and what we said therein must be construed in the light of the facts.

''In this case the plaintiff was not the foreman (or vice-principal), but was riding upon a motor car run by the foreman, or vice-principal. The evidence disclosed

a very dangerous curve, and upon all the facts we believe the instruction proper. This is predicated very largely upon the theory that by the rule discussed the defendant had in effect conceded a duty.''

IV. Thus far, we have quoted largely the opinion written in Division One. The record fails to disclose any exceptions of appellant to the action of the trial court in giving and receiving instructions, save only as to the refusal of the instruction in the nature of a demurrer to the evidence. A consideration of the demurrer to the evidence, the motion to strike out parts of the petition and objections to the introduction of evidence, tending to show the facts upon which the main instructions were based, involve a consideration of the same questions which determine the propriety of giving such instructions. We have already considered Instructions B and C. We will now proceed to consider Instructions E and F, as if the proper exceptions thereto were shown of record.

*No Exceptions.*

V. In considering Instruction E, the divisional opinion held that the servants of appellant operating Car 100 were under no duty to be on the lookout for respondent and the other section men riding upon motor Hand-Car 93 at the time and place and under the circumstances shown in evidence. For this reason it was found that Instruction E was improperly given. In that conclusion the majority of the court do not concur.

*Lookout for Section Men.*

Instruction E was as follows: ''The court instructs the jury that if you find and believe from the evidence in this case that on the afternoon of the 6th day of January, 1920, the servant or servants of the defendant railroad company in charge of its Car No. 100 were driving it northwardly in pursuance to the defendant's business on the defendant's tracks around an obscured curve, if any, at Plattin, Missouri, and if you find that said servant or servants were operating said car at the said time and place at such an excessive or dangerous rate of speed as

309 Mo.—37.

to constitute a failure to exercise ordinary care for the life and safety of the plaintiff, provided said servant or servants in charge of Car No. 100 knew, or in the exercise of ordinary care could have known, that plaintiff a section man, and the members of his section crew were likely to be at or near said obscured curve, if any, or if the servant or servants in charge of said Car No. 100 failed to exercise ordinary care to maintain a lookout for the plaintiff at said time and place if they knew, or in the exercise of ordinary care could have known, that he was likely to be at or near said cut and curve in the tracks, if any, and that in direct consequence of such excessive or dangerous rate of speed, if any, or failure, if any, to maintain a lookout as aforesaid, plaintiff was injured while exercising ordinary care for his own safety, then the defendant was guilty of negligence and your verdict will be in favor of the plaintiff and against the defendant railroad company.''

The foundation of the section-hand rule is that section men are at work upon or near the track and can protect themselves by merely taking a step or two at most to reach the zone of safety when train movements approach and pass their place of work. In operating trains over portions of the track where section men are thus at work, the railroad company has the right to assume that such section men will be familiar with schedules of regular trains and will be in a position to see and hear the approach of all trains, including extra trains, before they are in danger of injury. For this reason train operatives have the right, as a general rule, to expect a clear track at places where section men are at work upon and along the track.

Respondent and the section crew with which he was working were not engaged in working upon or beside the track at the time of the collision. Under orders of the proper agent of appellant they were riding in a hand-car to a place where they would have gone to work upon the track and where they would have been subject to the section-hand rule in all its force and rigor; but they had

not yet reached it. Appellant knew that they were like-
ly to be moving upon said track at any point within the
ten-mile section, where they were required to clean and
salt switches, and therefore knew that they were liable
to be riding upon said hand-car in the very cut and curve
in question when Car 100 reached that point.

Appellant would have us hold that a railroad may
send out an extra and unexpected train upon a track,
where a section crew has previously been ordered to move
in a hand-car with knowledge only of scheduled train
movements, and that its servants operating such extra
train have the right to expect a track free of the presence
of such properly moving hand-car and its occupants and
are under no legal duty to keep a lookout for such sec-
tion men under such circumstances. To state the propo-
sition is to refute it.

Cases where section men are working upon or be-
side the train and can easily step aside to avoid injury
are of no value. Those cases have no reasonable appli-
cation to the situation here. We have examined the
cases cited by appellant. Most of them are cases where
the injured employees were section hands at work in
the ordinary manner, repairing track, cutting weeds,
cleaning off snow or other similar work at the time they
were injured by passing trains and such cases need not
be noticed.

In Nivert v. Railroad, 232 Mo. 626, the injured em-
ployee was at work upon a short low trestle. He there-
fore had at least some chance to escape. He was negli-
gent in turning his back upon the approaching train and
the decision against him was based upon his contributory
negligence.

Kirkland v. Bixby, 282 Mo. 462, has already been
discussed and need not be further noticed.

In Woods v. Railroad Co., 187 S. W. (Mo.) 11,
the injured employee had been riding upon a moving
hand-car. The approaching train was seen. All of the
section men succeeded in leaving the hand-car in ample
time. The train was so near at hand that the section

foreman gave an order not to try to remove the hand-car. Plaintiff apparently did not hear the order and was attempting to lift the hand-car from the rails when the collision occurred.

In Whittlesey v. Railroad, 77 Conn. 100, the deceased section man was killed in a collision between a regularly scheduled train, running twenty minutes late, and a hand-car. The collision took place in a curve. The only negligence charged in the petition was the failure of the foreman to send a flagman ahead before the hand-car entered the dangerous curve. The court held that the deceased and his foreman were fellow-servants, and such was the reason for the reversal of the judgment.

None of the cases cited by appellant have extended the section-hand rule as far as we are here asked to apply it. Certainly the rule is reasonable in all cases where section men are at work upon or beside the track in places where safety is immediately at hand. The applicability of the rule is apparent also when section men are employed in places where safety is not immediately at hand or where they are required to ride in hand-cars over the track, in so far as train movements running upon regular schedules are concerned, though such movements are belated. This is because the section men have knowledge that such train movements will surely take place and they are able to and should protect themselves sufficiently in advance. In all such cases the rule is that operatives in control of regular train movements and of extra movements of which section men are duly apprized, have the right to expect a clear track. But the reasons for the rule utterly fail when an unexpected and unheralded train movement is sent out over a track where section men are required and expected to be working in positions where safety is not immediately at hand or where they are known to be moving in hand-cars without knowledge or means of knowledge of such extra train movement. The reason for the rule having failed, the rule itself fails.

Instincts of common humanity dictate that servants of the railroad operating extra trains which are unan-

nounced be required to be on the lookout for section men known to be or likely to be in places of peril and unable adequately to protect themselves. That which should be the law is the law. Train men can expect a clear track under all circumstances, if the particular train is a regular one, because it is the duty of section men to clear the track for it. The same right to expect a clear track applies to an extra train if its movement has been reported or signaled. An unannounced extra train cannot be assured of a track clear of section men unless such section men are working where safety is immediately at hand and where they can see or hear the approach of trains in ample time.

Appellant had ordered respondent and his crew out upon the track in the performance of work which required them to ride from place to place in the motor hand-car without notifying them of the movement of Car 100. For that reason appellant had no right to expect a clear track for its Car 100, while it moved through said cut and curve, and the operator of said car likewise had no such right to expect a clear track. Appellant and its servants operating Car 100 were therefore under the duty of keeping a lookout for respondent and the section crew.

Appellant recognized that it had no right to expect a clear track for extra trains under such circumstances, because it promulgated Rule 695, which provided that when employees were running extra and delayed trains "they must sound the whistle as per rule in approaching curves where the view of the track is obstructed; and if such curve be long they must repeat the signal at intervals of a quarter of a mile until they are passed or until the view is clear."

No rule touching the duty of train men to keep a lookout in obstructed cuts and curves was shown in evidence. But such duty arises out of the circumstances in evidence independent of any rule upon the subject. Ordinary care laid such duty upon them. If the servants of appellant operating said Car 100 failed to exercise ordinary care to keep such lookout under the circum-

stances in evidence, such failure was negligence and, if such negligence resulted in respondent's injury, he was entitled to recover.

The same considerations which made it the duty of the employees of appellant operating Car 100 to keep a lookout for respondent while rounding the obscured curve made it the duty of such employees not to drive said Car 100 around said curve at an excessive and dangerous speed.

<span style="float:left">Dangerous Speed.</span>

We hold that Instruction E was properly given to the jury.

VI.    Instruction F was as follows: "The court instructs the jury that it is the duty of the defendant railroad company under the law as it existed on and prior to January 6, 1920, to adopt and enforce reasonable and adequate rules to the end that its workmen, including its section men, may be reasonably safeguarded in their work, and if you find and believe from the evidence in this case that the exercise of ordinary care and prudence in the operation of the defendant's railroad required that for the reasonable safety of its section men the defendant's telegraph operators or station agents should be immediately notified when the defendant's Car No. 100 was about to begin a special trip past their respective stations, so the section men, if any at said stations could be notified, if you find from the evidence in this case that ordinary care required that they should be notified thereof, and if you then further find from the evidence in this case that the defendant's operator or station agent at Festus, Missouri, was not so notified of the special northward trip to be made by said Car No. 100 past Festus on the afternoon of January 6, 1920, and that the defendant's section foreman, Hugh Miller, was not notified thereof when, in the exercise of ordinary care and prudence by the defendant's agents and servants he could have been so notified, if you so find, before he proceeded to Plattin on said afternoon with his section crew, including plaintiff, and as a direct consequence of such failure, if any,

<span style="float:left">Report of Extra Train.</span>

to notify as aforesaid the plaintiff was struck and injured on the afternoon of January 6, 1920, near Plattin, by said Car No. 100 coming northwardly on the defendant's tracks and at a time while plaintiff was acting under the orders of the defendant's foreman and exercising ordinary care for his own safety, then the defendant railroad company was guilty of negligence and your verdict will be in favor of the plaintiff and against the defendant railroad company.''

We adopt the divisional opinion at this point:

''The evidence discloses that the foreman of this crew went into Festus station to get train times, and that no extra train was reported to him. The agent says that no special or extra train was reported. So far as the evidence shows this extra train was never reported to the station agents, although it was customary to report such trains. Ordinary care (evidenced by defendant's own conduct in usually reporting the time of extra trains) would require reports of extra trains to be made to the station agents. Had this train and its time been reported, it might have averted this injury, although the details as to when this Car No. 100 started north are not clear. At least the defendant owed a duty to report these extra trains, so that section men might have a chance to get the information at the station through which they pass. Ordinary care would require this much. In all cases the section men might not be benefited by such care, but in this case this accident might have been prevented by the report of this train to the station agents. The foreman said that he always called for the time of extra trains, but got nothing as to this extra train.''

We think Instruction F was properly given.

VII. There are other assignments of error which the result reached in the divisional opinion made it unnecessary to consider. Error is assigned to the giving **No Exceptions.** of other instructions and to the refusal of instructions asked by appellant. As no exceptions are shown to have been saved to the court's

action as hereinabove indicated, such assignments of error are not before us for consideration.

VIII. Appellant has assigned error in respect to the rulings of the trial court in the admission and the exclusion of evidence. Most of said rulings are disposed of by our consideration of the assignments of error in respect to the propriety of the Instructions B, C, E and F and need not be further noticed.

*Immaterial Evidence.*

Whatever may be said of the correctness of the action of the court in excluding evidence touching certain physical movements of respondent after he was injured, we do not deem such rulings to be reversible error for the reason that it appears that the admission of such testimony would not likely have affected the result. There appears to be no question under all the testimony that respondent was most seriously injured and that he was totally and permanently disabled.

IX. In its answer appellant set up an alleged counterclaim against respondent in the sum of $852, for indemnity and relief furnished to respondent on account of hospital bills, doctor bills, nurse hire, medicine, clothing and dressings. The proof consisted of a receipted bill from a physician in that sum for visits, operations, dressings, X-ray work and plaster casts. The verdict of the jury made no special finding upon said counterclaim. It reads:

"We, the jury in the above entitled cause, find the issues in favor of the plaintiff and against the defendant and assess the plaintiff's damages in the sum of $21,-168.00."

Such verdict is said not to be responsive to the issues made by the pleadings and this is urged as a reason why the motion in arrest of judgment should have been sustained. The trial court's failure to sustain the same is assigned as error in this court.

The trial court instructed the jury that it might allow such claim and "find the issues for defendant on his offset in such sum as would equal the fair, reasonable

market value, . . . but not to exceed the sum of $832." It does not appear how the court came to state the amount at $832 in the instruction, when the allegation and proof were that the amount of the claim was $852. No exception to the giving of said instruction is noted.

Respondent suggests that the amount of the verdict indicates that the jury did allow appellant's offset of $832, as fixed in the instruction, and subtracted such allowance from an award of damages in the sum of $22,000, leaving the balance in plaintiff's favor of $21,168 named in the verdict. Necessarily it is nothing more than a guess that the jury so reached the amount of the verdict.

The basis for appellant's right to set off its expenditures in behalf of respondent is Section 8661 of the Federal Employer's Liability Act. It reads as follows:

"Any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall, to that extent, be void: Provided, that in any action brought against any such common carrier under or by virtue of any of the provisions of this act such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought."

Said section does not authorize a counterclaim upon which a separate judgment may be based. Such expenditures may only be set off against the claim for damages of the injured employee. Appellant's claim did not grow out of an independent contract or transaction. The trial court told the jury to allow said set-off, if it found certain facts. The jury is presumed to have followed the court's instruction. The amount of the verdict lends some support to the contention of the respondent that the jury did this. The failure of the jury to make a specific finding in the verdict in this respect is not reversible error. [Cosgrove v. Stange, 194 Mo. App. 14; Nowell v.

Mode, 132 Mo. App. l. c. 243; Lindsey v. Nagel, 157 Mo. App. 128, and the cases cited in such cases.] The cases relied upon by appellant are not deemed to be in point upon their facts.

X. The verdict is challenged as being excessive. There is no question concerning the serious nature of respondent's injuries. Counsel for appellant admitted that "it is quite apparent that the plaintiff is injured quite considerably." The evidence tends to show that the injuries sustained were such as to prevent respondent from working as a laborer in the future. He had no education which would enable him to engage in business or in any profession. The injuries disabled respondent in getting about and, at the time of the trial more than two years after the accident, he suffered from pain and loss of sleep and was emaciated and ill as well. His injuries are shown to be permanent. Without going into further details, it suffices to say that the evidence tends to show that respondent is to all intents and purposes a complete and permanent physical wreck. The only ground of assault upon the amount of the verdict is that *considering the earning capacity of respondent,* the verdict is excessive. He was earning $2.80 per day and testified that he earned seventy-five or eighty dollars per month, which would amount to nine hundred or nine hundred and sixty dollars per annum. He was thirty-four years of age and had an expectancy of thirty-two and a half years, according to recognized tables.

In the case of Crecelius v. Railway Co., 284 Mo. 26, l. c. 43, which was a death case, and is the only case cited and relied upon by appellant, the deceased was of the same age and same expectancy, and judgment for $25,000 was reduced to $15,000. That amount was allowed to stand as the bare pecuniary value of his life to his wife and children, when deceased had been earning only a little more than two-thirds as much as was respondent when he was injured. That allowance took no account of pain and suffering or other elements of damage sufferable by the injured person, but not recoverable as part of

the pecuniary loss to a surviving widow or children. The Crecelius case is not authority for the contention of appellant. We cannot say that the verdict in this case is excessive.

Finding no reversible error in the record, the judgment is affirmed. All concur, except *Graves, C. J.*, who dissents.