WILLIAM WILLIAMSON, Respondent, v. THE WABASH RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 15, 1909.

1. **MASTER AND SERVANT:** Negligence. A section hand working upon a track trying to remove a handcar from the track knowing that a regular train was approaching, and there was nothing but his own heedlessness or preoccupation to keep him on the track, and there was not the slightest excuse for remaining there until struck by the train, was as a matter of law guilty of negligence.

139 App—31

2. ———: ———: **Evidence.** Probative force is given to negative testimony where the opportunity of the witnesses to receive knowledge of the fact, is approximately equal to that of witnesses who give positive testimony concerning it, but where because of an impaired sense, or of an admitted lack of attention, it is apparent that the opportunity of the witnesses who did not see or hear, is unequal to that of the witnesses who did, the testimony of the former should be rejected as wholly devoid of evidentiary strength.

3. ———: ———: **Last Chance Doctrine.** While six hundred feet away the engineer discovered that plaintiff had his feet against the rail and his body extended across the track in an endeavor to lift a handcar from the track. The position of plaintiff was an awkward one and some time would be required for him to extricate himself and there was ample time to give the danger signal by whistling and had plaintiff heeded it he could have escaped but a collision with the handcar could not be avoided. *Held*, that plaintiff was entitled, despite his own negligence to go to the jury on the issues of last chance negligence.

4. ———: ———: **Instructions.** An instruction that assumes as proved, the fact that plaintiff had no knowledge of the close approach of the train and of his own peril, these being controverted facts and material, is erroneous, it being a question for the jury whether he was oblivious to his peril and if he knew of his peril the jury might find that he wantonly exposed himself to a danger of which he had full knowledge, and from which he could have escaped. The beneficent principle of the humanitarian doctrine is not for the protection of the wanton, but for that of the negligent and careless.

Appeal from the Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

REVERSED.

*J. L. Minnis* and *Robertson & Robertson* for appellant.

(1) The petition does not state a cause of action. The petition must be taken in connection with the statement of plaintiff's counsel. Pratt v. Conway, 148 Mo. 291; O'Keefe v. United Railways, 124 Mo. App. 613; Oscanyan v. Arms Co., 103 U. S. 261. (2) And taken in connection with such statement, it does not state a

cause of action. Sissel v. Railroad, 214 Mo. 515; Evans
v. Railroad, 178 Mo. 517; Cahill v. Railroad, 205 Mo.
393; Brockschmidt v. Railroad, 205 Mo. 435; Clancy v.
Railroad, 192 Mo. 657. (3) The court erred in refusing
to instruct a verdict for the defendant at the close of the
plaintiff's evidence and at the close of all the evidence.
Plaintiff was fully aware of his peril as he knew the
train was approaching and his negligence in failing to
step from the track and avoid being struck was the
proximate cause of his injury. Sissel v. Railroad, supra;
Clancy v. Railroad, supra; Brockschmidt v. Railroad,
supra; Sharp v. Railroad, 161 Mo. 214; Cahill v. Rail-
road, supra; Evans v. Railroad, supra; Kinlen v. Rail-
road, 216 Mo. 165; Sims v. Railroad, 116 Mo. App.
572; Ross v. Railroad, 113 Mo. App. 605. (4) Although
the plaintiff's own evidence shows that he knew that
the train was approaching him it allows the jury to find
that plaintiff did not know of its near approach. This
is error. Willis v. Power Co., 111 Mo. App. 587; Cham-
bers v. Railroad, 111 Mo. App. 609; Houck v. Railroad,
116 Mo. App. 559; Porter v. Railroad, 199 Mo. 93.
(5) It allowed the jury to find that the whistle was
not sounded as a warning, when the evidence showed
that it was sounded. Plaintiff's testimony that he heard
no whistle signals was not any evidence that they were
not given, nor was that of Robert Fairburn. Plaintiff
was not giving the least heed to the train, while Fair-
burn could not recollect any signals, was deaf, and ab-
sorbed in his work. Moore on Facts, secs. 1188, 1190,
1203; McGrath v. Transit Co., 197 Mo. 105; Sullivan
v. Railroad, 72 Mo. 195. (6) Therefore the instruction
allowing the jury to find that the whistle was not sound-
ed was error. Willis v. Power Co., supra; Chambers v.
Railroad, supra; Houck v. Railroad, supra; Porter v.
Railroad, supra. (7) The verdict is excessive. The
plaintiff's leg was broken and he also received a few
minor injuries. There was no expense for treatment.
Impairment of earning capacity was not pleaded, there

was no evidence of such impairment, and no damages were asked for on that ground in plaintiff's instructions. Therefore the damages must be confined to loss of earnings up to the time of suit (Copeland v. Railroad, 175 Mo. 668), and to pain and suffering. Under these circumstances the verdict is excessive. Railroad v. Wiswell, 68 Ill. App. 443, 48 N. E. 407; Lombard v. Railroad, 47 Iowa 494; Slette v. Railroad, 55 N. W. 137; Dwyer v. Hickler, 43 N. Y. St. R. 221, 16 N. Y. Supp. 814.

*M. J. Lilly* for respondent.

(1) The petition states a cause of action. Kellny v. Railroad, 101 Mo. 74; Morgan v. Railroad, 159 Mo. 262; Bectenwald v. Railroad, 121 Mo. App. 599; Cole v. Railroad, 121 Mo. App. 612; Hinzeman v. Railroad, 182 Mo. 622; Hinzeman v. Railroad, 199 Mo. 65; Ross v. Railroad, 113 Mo. App. 605 and cases there cited. (2) Statements made by an attorney at the opening of the trial, as to what he expects to prove, do not amount to admissions. They bind no one. Russ v. Railroad, 112 Mo. 50; Fillingham v. Transit Co., 102 Mo. App. 579. (3) Aside from this legal proposition, the statement made by counsel for plaintiff in this case substantially followed the petition and showed a *prima facie* case. Plaintiff had no knowledge of the approach of the train. The evidence of plaintiff's witnesses is conflicting as to whether the engineer ever sounded the whistle or not. It is the province of the jury to settle the conflict between plaintiff's witnesses. McGee v. Railroad, 214 Mo. 544; Knorpp v. Wagner, 195 Mo. 661. (4) So far as the whistle is concerned the only signal testified to by any witness was a road crossing signal, "two longs and two shorts." (5) Defendant's instruction "I" as modified by the court correctly declared the law. This instruction as originally drawn limited defendant's duty in the use of all means in its power to stopping the train, and was for that reason objectionable. Hinze-

man v. Railroad, supra.   (6) When the facts of a case
bring it within the "humanitarian rule," nothing short
of the use of all reasonable means to avert the injury
within the power of the one charged with the exercise
of the humanitarian duty meets the requirement of the
rule.   Cole v. Railroad, 121 Mo. App. 612.

JOHNSON, J.—This suit is for damages for per-
sonal injuries alleged to have been caused by the negli-
gence of defendant.   Verdict and judgment were for
plaintiff in the sum of thirty-five hundred dollars, and
the cause is here on the appeal of defendant.

The injury occurred about five o'clock p.m. April
13, 1908, at a point on defendant's railroad about one
and three-quarter miles south of Cairo.   Plaintiff was
a section hand in the service of defendant on the section
between Cairo and Moberly.   The gang had been work-
ing about one thousand feet north of the place of the
injury.   A south-bound regular freight train, sometime
overdue, was observed by the foreman to arrive at Cairo,
whereupon he ordered some of the men to go for the
handcar which was on a dump some distance north.
When the men returned with the handcar, the foreman
ordered plaintiff and another hand to load the tools
on the car and take it south to another dump.   Accord-
ing to the testimony of plaintiff, the foreman said:
"You take this handcar down there and put the tools
on it and set it off the track, but put all the tools on
it first and set it off; number seventy (the freight
train) is up there; I think you have plenty of time."
In obedience to this order, plaintiff and his fellow-
workman, after the car was loaded, ran it down to
the place indicated and proceeded to remove it to the
dump which was on the west side of the track.   They
lifted and pushed the forward end of the car around
to the dump and then plaintiff went around to the rear
end to push the car westward until it would clear the
track.   To do this, he was compelled to take a position

between the rails.  In pushing the car westward, the rear wheels became stuck or obstructed in some way, retarding the clearing of the track.  Plaintiff testified: "I was trying to get the car off the track and I had my head down kinda and was trying to lift the car up and it got caught some way, I don't know how, I had my head down looking under the car trying to raise it up, I was trying to raise the car up to get it off the track . . . and the first thing I knowed I didn't know nothing."  At this time the locomotive collided with the handcar and plaintiff was struck and severely injured.

In their argument on the demurrer to the evidence, counsel for defendant earnestly contend that plaintiff was guilty of negligence in law which directly caused or at least contributed to his injury.  And further they argue that the facts and circumstances in their aspect most favorable to plaintiff disclose no cause of action under the "humanitarian doctrine."

Facts and circumstances in evidence which are pertinent to the questions argued thus may be stated: Plaintiff says in substance that he did not see the train at any time, did not know it was so near at hand when he was striving to push the handcar off the track and did not hear any warning of its approach.  He does admit the foreman told him the train was coming and on cross-examination testified: "Q.  You were working as fast as you could?  A.  Supposed to be.  Q.  What were you taking that car off for?  A.  For number seventy?  Q.  Number seventy that was coming?  A. Yes, sir."

The dump to which plaintiff was trying to move the handcar was quite near the whistling post for a road crossing some distance south.  All the witnesses introduced by plaintiff except plaintiff himself and one other state the whistle sounded the road crossing signal when the locomotive was about six hundred feet north of the dump.  Plaintiff and this witness say they did

not hear the whistle, but plaintiff attempts to exonerate himself from the imputation of neglecting his own safety by the claim that he had become engrossed in his work, and the other witness admitted on cross-examination that he is "pretty hard of hearing," and "was absorbed in his work." The country through which the train was running is an open prairie and the train was going up a slight grade in approaching the handcar. At the point where the engine whistled for the crossing there is a slight curve in the track. The engineer introduced as a witness testified: "As I approached the curve I could see right straight across and could see the whistling board and could see the handcar setting on the dump and the whistling board in the middle, setting in the middle, and that put me of the opinion that it was in the clear as I approached a little closer I saw that it was not in the clear and I went around the curve a little bit further and saw this handcar, about six hundred feet from the whistling board, and the very minute I saw the man on the track, and he was laying down with his left shoulder against the handcar and his feet up against the opposite rail, trying to push the handcar over and as soon as I seen him, I shut off the steam, and put on the emergency, and give the whistle, two longs and two shorts. He was laying with his left shoulder against that handcar and looking me straight in the eye.

"Q. When you saw him in that position you did what, Mr. Moeller? A. Shut off the steam, throwed the brake and emergency and give the whistle.

"Q. Two longs and two shorts, I believe you said? A. Yes, sir.

"Q. How far were you from the men when you gave the whistle? A. Five or six hundred feet.

"Q. How far was you when you got through giving the whistle? A. I judge I would be four or five hundred feet, I suppose I must have run about that.

"Q. The car was cross-ways the track and he was down with his feet against the opposite rail? A. With his shoulder against the handcar.

"Q. He was shoving, and he had his face turned toward the engine? A. Yes, sir, looking me in the eye.

"Q. Did you stop as quick as you could? A. Yes, sir.

"Q. Well. A. When I found out that he was not going to get off the track I stuck my head out of the window and waved at him and hollered at him as loud as I could, and then he raised to his feet and instead of going this way (indicating) he backed up, and I went underneath the car with the pilot and struck him. . . .

"Q. When he was on the ground as you have testified that he was, with his feet against the rail and his shoulder against the handcar, you were only sixty feet from him, sixty feet away? A. Just about, yes.

"Q. How long had he been in that position? A. He was trying to push the handcar.

"Q. Was that the position in which you first discovered him? A. Yes, sir.

"Q. After you discovered his peril, instead of continuing to sound the whistle, you stuck your head out of the cab and hollered at him? A. I hollered and whistled for him."

Other witnesses for plaintiff who were paying close attention deny that any warning was given by the whistle after the crossing signal.

We shall assume as conclusively proved by evidence introduced by plaintiff that the crossing signal was given when the locomotive was not more than six hundred feet from the handcar and was in plain view. The statements of plaintiff and his witness of defective hearing are valueless and cannot be suffered to raise an issue of fact. We accord probative force to negative testimony where the opportunity of the witnesses to receive knowledge of the fact is approximately equal to

that of witnesses who give positive testimony concerning it. [Butler v. Railway, 117 Mo. App. 354.] But where, because of an impaired sense or of an admitted lack of attention it is apparent that the opportunity of the witness who did not see or hear is unequal to that of the witness who did see or hear; the testimony of the former should be rejected as wholly devoid of evidentiary strength.

The rule thus is stated in 2 Moore on Facts, sec. 1188: "If a credible witness with apparently adequate opportunity for observation testifies to the occurrence of a fact, no conflict arises by the testimony of other witnesses that they were cognizant of the occurrence, where the latter witnesses' opportunities for observation are not stated, or where it affirmatively appears that their situation was such or their attention was so engrossed with other matters that they probably would not have observed the fact if it had occurred, or where their opportunities were not coextensive with those of the witnesses who testify positively to the fact."

But we shall treat as an issue of fact the statement of the engineer that he sounded the whistle when the engine was about six hundred feet from the handcar, since that statement is contradicted by the testimony of witnesses who were giving attention and whose opportunity to know the real fact was equal to that of the engineer. Therefore, for the purposes of the demurrer to the evidence, we shall assume that the crossing signal was given and that the whistle was not sounded again before the collision.

That the peril of plaintiff was created by his own negligence is a conclusion not open to serious doubt. As a section hand it was his duty to be on the lookout for trains and to keep out of their way and he "had no right to become so engrossed in his work as to become heedless of his danger and as not to take proper precautions to observe the approach of trains." [Sissel v.

Railroad, 214 Mo. l. c. 528; Clancy v. Transit Co., 192 Mo. l. c. 657.]

The prime object of the operators of a railroad is— or at least should be—the service of the public. The business is highly complex and calls for a strict adherence to system and discipline. Trains in the service of the public must be run on schedules and not be impeded by track repairers except in cases of necessity. Plaintiff knew that a regular train was approaching and that it would assert a right of way over him and his handcar. There was nothing to keep him on the track but his own heedlessness or pre-occupation and he had not the slightest excuse for remaining there until the train knocked him off. His peril was the result of his own negligence.

But counsel for plaintiff have not made the mistake of basing their cause of action on negligence that might be made innocuous by contributory negligence. They argue that their client acted in a proper manner but in the petition, evidence and instructions, they plant plaintiff's case squarely on the humanitarian doctrine, and the principal question for our decision is whether or not they have made out a case under the principle and rules of that doctrine. Were it not for the testimony of the engineer, we would declare that plaintiff had no case. As was said by the Supreme Court in Evans v. Railroad, 176 Mo. l. c. 517 (quoted approvingly in Sissel v. Railway, supra) : "It will not do to apply this rule in all its strictness to section men whose business it is to work upon and keep in repair railroad tracks, for they are supposed to look after their own personal safety, and to know of the time at which trains pass, to look for them and see them, and to move out of the way. It is of common knowledge that these men often voluntarily wait until trains get dangerously close to them, and then step out of danger and let them pass by, and to require trains to stop upon all such occasions, when section men are discovered at work on

the track, would not only be imposing upon railroads unjust burdens, but would greatly interfere with traffic and travel."

When an engineer sees a section hand at work on the track and has good reason to believe the man is aware of the approach of the train, there is, in the bare fact that the man remains on the track until the very last instant, nothing to suggest to the engineer that he is oblivious to his danger- and will not step off in time to avoid being struck; but whenever there is that in the appearance of the section hand that would indicate the existence of real peril, the engineer should exert himself to avoid injuring the man. In such situation, the facts that the man is a section hand and, in the exercise of his duty, should get out of the way, sink into insignificance and give way to the all controlling fact that a human being is in peril and the engineer has the means at hand for saving him.

The engineer says that when plaintiff was six hundred feet away, he discovered that plaintiff had his feet planted against the east rail and his body extended nearer a horizontal than a perpendicular line in an effort to push and lift the car with his left shoulder. He says plaintiff was looking towards the train but be this as it may, plaintiff was in an extremely awkward position, one from which it would require some time and effort to extricate himself. He was not in the situation of a person who has but a step or two to take to reach safety, and we think it was for the jury to say whether or not there was an appearance of peril to a reasonably careful and humane man in the position of the engineer. If there was, the engineer should have made reasonable use of the means at his command to save this foolish person. It appears that he could not avoid a collision with the handcar, but it also appears that he had ample opportunity to whistle the danger signal. Had he done so, the inference is reasonable that plaintiff would have heeded the warning and escaped.

We conclude that despite his own negligence, plaintiff was entitled to go to the jury on the issue of last chance negligence.

But the judgment must be reversed and the cause remanded on account of prejudicial error in the first instruction given at the request of plaintiff. In that instruction, the court assumes as proved the fact that plaintiff had no knowledge of the near approach of the train and of his peril. These were controverted facts and both were material. If, as the engineer says, plaintiff was looking at the approaching train and had time to escape, it is, at least, a question of fact for the jury whether he was oblivious to his peril; and if he had knowledge of the real extent of his peril, his act in remaining therein would entitle the jury to find that he wantonly exposed himself to a danger of which he had full knowledge and from which he could have escaped. The beneficent principle of the humanitarian doctrine is for the protection of the negligent and careless and not of the wanton. To illustrate, suppose a man were to throw himself in front of a train with the intention of committing suicide, would not conclusive proof of that fact end all question of responsibility, regardless of whether or not the engineer might have stopped the train? And in this case, it may be asked—and there could be but one answer to the question—what would have been the use of signalling a danger to plaintiff of the existence of which he already had full knowledge? The facts assumed by the court were of the very marrow of the case, and should have been included among the facts in issue.

For this error, the judgment is reversed and the cause remanded. All concur.