WILLIAM WILLIAMSON, Respondent, v. WABASH
RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, May 1, 1911.

RAILROADS: Humanitarian Doctrine: Failure to Whistle or Stop.
Where, from the engineer's statement of what he saw and
what he did, the conclusion is irresistible that he fully real-
ized the real peril of plaintiff when the engine was five hun-
dred feet from the place of collision, no matter how negligent
plaintiff may have been in placing himself in a position of
danger, it was the duty of the engineer to make reasonable
use of the means at. hand to avert the injury, and a negligent
breach of such duty would constitute actionable negligence.
Hence, where the evidence was substantial although contra-
dictory to the engineer's statement, that no effort was made
to stop and that no warning signal was given by whistle, the
demurrer to the evidence was rightly overruled.

Appeal from Randolph Circuit Court.—*Hon. Alexander
H. Waller*, Judge.

AFFIRMED CONDITIONALLY.

*J. L. Minnis* and *Robertson & Robertson* for appel-
lant.

(1)    Plaintiff's petition taken in connection with
the opening statement of counsel to the jury does not
state a cause of action and defendant's objection to the
introduction of any testimony under the petition should
have been sustained.    Pratt v. Conway, 184 Mo. 291;
O'Keefe v. United Railways, 124 Mo. App. 613; Oscanyn
v. Arms Co., 103 U. S. 261.    (2)    The court at the close
of the plaintiff's evidence and at the close of all the evi-
dence erred in refusing to instruct a verdict for the de-
fendant.    Ring v. Railroad, 112 Mo. 230; Evans v. Rail-
road, 178 Mo. 517; Cahill v. Railroad, 205 Mo. 393;
Brockschmidt v. Railroad, 205 Mo. 435; Clancy v. Rail-
road, 192 Mo. 615; Sissel v. Railroad, 214 Mo. 515; Sharp
v. Railroad, 161 Mo. 214.    (3)    The court erred in re-

fusing to withdraw from the jury the testimony of Dr. Lyter as to the plaintiff's having appendicitis and the operation therefor. 2 Joyce on Damages, sec. 276. He never said the appendicitis was the result of the injury, but on the other hand distinctly said he would not say so and that he had no opinion on the subject. 1 White Personal Injuries on Railroads, sec. 100; Wood v. Railway, 181 Mo. 433; Smith v. Kansas City, 125 Mo. App. 157; 17 Cyc. 39-40, 74-75. (4) Plaintiff's instruction No. 2 as to the measure of damages is error. The court erred in directing the jury that in determining the amount of damages they could take into consideration all of the other facts and circumstances given in evidence. This was a roving commission to the jury, would leave them free to consider other things than which were pointed out in the instruction as elements of damages. This would permit the jury to allow not only compensatory but punitive damages, and any other imaginative thing or matter that might come into their minds. Stoher v. Railroad, 91 Mo. 509; Eberly v. Railroad, 96 Mo. App. 370. (5) There is no allegation in the petition as to permanent injury, loss of time or loss of earning capacity and the instruction allowing for them is error. Nor is there any evidence as to loss of earning capacity. Stafford v. Adams, 113 Mo. App. 717; Haworth v. Railroad, 94 Mo. App. 215; Duke v. Railroad, 99 Mo. 347. Smith v. Railroad, 108 Mo. 243; Kriger v. Railroad, 94 Mo. App. 458; Slaughter v. Railroad, 116 Mo. 269.

*M. J. Lilly* for respondent.

(1) Plaintiff's petition states a cause of action, whether taken alone or in connection with plaintiff's opening statement. Kellny v. Railroad, 101 Mo. 67; Morgan v. Railroad, 159 Mo. 262; Rectenwald v. Met. Street Ry. Co., 121 Mo. App. 599; Cole v. Met. Street Ry. Co., 121 Mo. App. 612; Hinzeman v. Railroad, 182 Mo. 622; s. c. 199 Mo. 65; Ross v. Railroad, 113 Mo. App. 605.

(2) The demurrer to the evidence was properly over-ruled. It is well settled that if the inferences to be drawn are not certain nor incontrovertible, the question of negligence cannot be passed upon by the court. Ross v. Railroad, 113 Mo. App. 608; Gratiot v. Railroad, 116 Mo. 466; Baird v. Railroad, 146 Mo. 281. The facts of this case with the exception that the engineer's testimony as to his ability to stop his train were before this court on a former appeal and it was then held that a case had been made for the jury under proper instructions. Williamson v. Railroad, 139 Mo. App. 481.

JOHNSON, J.—The first trial of this case resulted in a judgment for plaintiff in the sum of $3500. On appeal of defendant we reversed the judgment and remanded the cause on the ground of error in an instruction given at the request of plaintiff. (Williamson v. Railroad, 139 Mo. App. 481). Afterward plaintiff amended his petition changing the amount of damages claimed by him. Defendant filed an answer containing a general denial, pleas of contributory negligence and assumed risk, and an averment that the train which inflicted the injury was engaged in interstate commerce.

The real issue presented by the pleadings and contested in both the first and second trials was whether or not the injury of plaintiff was caused by negligence of defendant under the rules of the humanitarian doctrine. The second trial resulted in a verdict and judgment for plaintiff in the sum of $6000, and again defendant appealed.

There is but little difference in the evidence introduced at the two trials and the case now before us is the same in essential features as that considered by us on the former appeal. We refer to that decision for a statement of the facts and shall mention in this opinion only facts about which there is some variance in the two records. That the peril of plaintiff was produced by his own negligence is a fact about which there is no contro-

versy in the pleadings and evidence and we say, as we said before, " were it not for the testimony of the engineer, we would declare that plaintiff had no case" under the last chance rule. But we find the testimony of the engineer in the present record more favorable to plaintiff than his former testimony. From his statement of what he saw and what he did, the conclusion is irresistible that he fully realized the real peril of plaintiff when the engine was five hundred feet from the place of collision. That is to say he knew that plaintiff was in a position on the track from which it would require some time to extricate himself and that plaintiff, though his face was turned towards the train, was oblivious to his peril. We quote from the engineer's testimony:

"Q. How far from him were you when you first discovered him on the track? A. About five hundred feet.

"Q. How do you arrive at that estimate? A. I judge from the point that I seen the handcar that it was about five hundred feet.

"Q. When you first discovered him on the track, what was he doing? A. When I first discovered him on the track, I throwed on the emergency and shut off steam and grabbed the whistle and whistled two long and two shorts very shrill to alarm him to get off the track.

"Q. How long did he continue in the position he was in when you first discovered him, after you discovered him on the track? A. I had traveled two hundred or three hundred feet when I stuck my head out of the window and hollered at him.

"Q. How close did you get to him before his position on the track changed? A. About sixty feet.

"Q. How long did it take you to give that signal which you have spoken about—two long and two short blasts of the whistle? A. Pulled the whistle open much longer than at the road crossing, trying to make him get off the track.

156 App.—35

"Q. About what distance did you cover with the engine and train while you were making that signal? A. Three hundred or four hundred feet.

"Q. How do you arrive at that? A. What?

"Q. How do you estimate that? A. I judge from the lay of the land as I passed over it day after day.

"Q. How close to Mr. Williamson were you when you ceased giving that signal with the whistle? A. Sixty feet.

"Q. I mean with the whistle? A. Very near that, I still had hold of the whistle lever."

These efforts of the engineer to save plaintiff by making an emergency stop and by trying to attract his attention by continuous whistling strongly indicate that the engineer had actual knowledge of the peril. No matter how negligent plaintiff may have been in placing himself in a position of danger there can be no question about the duty of the engineer in the situation disclosed. Knowing that plaintiff was in peril and was unaware of that peril it became the duty of the engineer to make reasonable use of the means at hand to avert the injury, and a negligent breach of such duty would constitute actionable negligence. The very recent decision of the Supreme Court in Nivert v. Wabash Railroad (not yet reported), to which our attention has been called by defendant, does not hold to the contrary. Paraphrasing a portion of the opinion of WOODSON, J., plaintiff had no right to assume a perilous position on the track and to rely upon the engineer to save him from injury, but we add that such culpability of plaintiff gave the engineer no right, after he fully appreciated the peril of the plaintiff, wantonly or negligently to injure plaintiff when, by the exercise of ordinary care and common humanity, he could avoid the injury. As was well said by LAMM, J., in his concurring opinion: "There is a class of cases where trackmen are seen to be in danger and seem to be oblivious to it where an imperative duty

arises to warn and, if possible, stop before running them down."

Plaintiff has succeeded in bringing himself within that class by evidence, contradictory of the statement of the engineer, tending to show that no effort was made to stop and that no warning signal was given by the whistle. The evidence was substantial and raised the issue of fact of whether or not the engineer after discovering the peril reasonably exerted himself to avoid the injury. The learned trial judge committed no error in overruling the demurrer to the evidence.

Objections are urged against the rulings of the court on the instructions, but we find the instructions free from prejudicial error. We sustain the contention of defendant that the verdict is excessive. Without going into a recital of the injuries we rule that the verdict of $3500 given at the first trial reached the maximum boundary of the discretion allowed the jury by law and that the second verdict and judgment are excessive in the amount of $2500. If, within ten days from the filing of this opinion, a remittitur of $2500, be filed by plaintiff the judgment will be affirmed. Otherwise it will be reversed and remanded. All concur.