CHARLES ARNOLD v. HENRY C. SCANDRETT, WALKER J. CUMMINGS, and GEORGE I. HAIGHT, Trustee of the Chicago, Milwaukee, St. Paul & Pacific Railroad Company, Appellants.—131 S. W. (2d) 542.

Division One, September 14, 1939.*

*Morrison, Nugent, Berger, Byers & Johns, James E. Nugent* and *Chas. C. Byers* for appellants.

*NOTE: Opinion filed at May Term, 1939, June 14, 1939, motion for rehearing filed; motion overruled July 7, 1939; motion to transfer to Court en Banc filed; motion overruled at September Term, September 14, 1939.

*Gerald Cross, Pross T. Cross, Ernest Hubbell* and *Platt Hubbell* for respondent.

BRADLEY, C.—Action under the Federal Employers' Liability Act (45 U. S. C. A., secs. 51 et seq.) for personal injury. The cause was filed in Grundy County, but the venue was changed to Clinton County. The verdict and judgment ($15,000) went for plaintiff and defendants appealed.

Plaintiff was a member of a section crew and was injured (ruptured) while assisting in putting a motorcar on the track from a setoff. The negligence alleged was (1) failure to carry, on the motorcar, a turntable with which the motorcar could be removed from and placed back on the track with more safety than the method

used (see infra); (2) in ordering and requiring (through the foreman) plaintiff and other members of the crew to place the motorcar on the track from a place not reasonably safe and by a method not reasonably safe; (3) negligence on the part of the foreman in failing to observe the position of the wheels on the lining bars (described infra) as the motorcar was being placed on the track, and in failing to warn plaintiff "with reference to the same;" and (4) failure to remove the motorcar from the track at the Reynolds farm crossing (used as a setoff), which crossing was about 1700 feet east of the setoff used.

The answer was a general denial, assumption of risk, contributory negligence, and a plea that plaintiff's injuries were solely caused by his own negligence. The reply was a general denial.

The cause went to the jury on all the alleged charges of negligence except on the turntable, and on the failure to use the Reynolds farm crossing.

Error is assigned (1) on refusing a demurrer to the evidence at the close of the case; (2) on the instructions; (3) on admission of evidence; (4) on conduct and argument of counsel; and (5) on an alleged excessive verdict.

It is in effect conceded that the case is properly under the Federal act. The railroad, at the place of injury, runs northeast and southwest, but is considered in the record as running east and west. The section, on which plaintiff worked, extended about eleven miles east from Chillicothe. The section crew consisted of James Walker, the foreman, and plaintiff, plaintiff's brother, Harry Arnold, and J. L. Phillips. The crew used a gasoline motorcar, the weight of which was about 1000 or 1100 pounds, in going over the section. Plaintiff was injured, about one and one-fourth miles east of Chillicothe, while assisting in putting the motorcar on the track from a setoff, about 400 feet west of bridge 688, and, as stated, 1700 feet west of the Reynolds crossing. On July 15, 1936, the crew came from the east, passed the Reynolds crossing; passed the bridge, and put the motorcar off on the setoff. Then the crew walked back; cut a fireguard under the bridge; did some track work and was then ready to put the motorcar back on the track and go in. The track was on an embankment, and the setoff used was on the south side of the track, and was about eight feet in width and extended back south about twelve or fourteen feet. The ballast extended out on the setoff five and one-half feet from the rail. The remainder of the setoff surface was cinders and dirt. The rails extended six inches above the ties, and the ballast came up only to the top of the ties both inside and outside the rails. Prior to July or August, 1935, this setoff and others had been provided with boards, between the rails, extending up to the top thereof, and board runways, out on the setoff, extending up as high as the rails. In July or August,

1935, an extra gang removed the old ballast and put down new gravel ballast. In doing the new ballast work, the boards, between the rails and the runways, at setoffs, were removed.

To put the motorcar back on the track from the setoff, the foreman directed that two lining bars (crowbars) be used as runners. These bars were five and one-half feet in length. The handle end was round and about one and one-fourth inches in diameter; the other end was wedge shaped. The west bar was placed by the foreman and the east one by Phillips. The handle ends, even with each other, were placed on the ball of the rail, and the bars extended back south, and the flat side rested on the setoff surface. With this setup the crew commenced to place the motorcar on the track. The front of the motorcar faced north. Plaintiff was at the southeast corner; Phillips at the southwest corner; the foreman at the northwest corner; and plaintiff's brother, Harry Arnold, at the northeast corner. Plaintiff and Phillips faced north and the foreman and plaintiff's brother faced south. Those in the rear lifted and pushed and those in front pulled.

The distance between the front and rear wheels of the motorcar was such that the rear wheels would reach the bars before the front wheels went over the rail, and plaintiff said that he and Phillips were directed by the foreman to lift the rear of the motorcar so that the rear wheels would not come in contact with the bars, and that such was done. This, according to plaintiff, was to protect the motorcar pulley wheel under the rear, which wheel was connected by belt with the engine at the front. Plaintiff testified that as the motorcar went up the bars, the east bar, in some way, moved forward about six inches and that the west front wheel of the motorcar dropped down to the ballast between the rails, before the east front wheel did, and that when the west front wheel so dropped down the southeast corner of the motorcar suddenly upkicked and struck him in the lower right abdomen, resulting in a direct inguinal hernia. No one saw the east bar move forward. Plaintiff noticed its changed position after the motorcar was placed on the track and when he picked up this bar to put it on the motorcar. Plaintiff said that the ends of the bars resting on the surface of the setoff sank down into the ground, and that his feet sank down three or four inches while lifting and pushing, as the motorcar went up the bars. The foreman and Phillips testified that the rear of the motorcar was not lifted as it went up the bars; and to the effect that the left front wheel did not go over and down first; that there was no sudden drop of the west front wheel; that the front of the motorcar was eased down. Plaintiff's brother did not testify. Plaintiff said that he felt a sharp pain when he was struck by the upkick, and that while riding on the motorcar into Chillicothe he "felt sick and blind," and "got blind and sick at my stomach," but he did not then say

anything about getting hurt or about how he felt. He worked the next day; "raised track and tamped ties."

Plaintiff testified that he had never assisted in taking the motorcar off or placing it on the track from this setoff in the condition it was when he was injured. As stated, prior to the ballasting in 1935, all the setoffs had boards between the rails and board runways, and the setoffs, at least on this section, were being restored to their original condition as the foreman found it convenient to get to them, but he said that he had not got to this one.

Henry Walton, a witness for plaintiff, testified that he had worked many years as a railroad track laborer; had been section foreman on the Rock Island; had been with the Burlington about ten years; had experience in building setoffs and in taking motorcars off and placing them on the track as setoffs. Walton, as an expert, testified to the effect that four men could not, with reasonable safety, put the motorcar on the track from this setoff. In other words, Walton, as an expert, testified this setoff was not reasonably safe. Also, Walton testified that the manner in which the motorcar was placed on the track from this setoff was not reasonably safe, and that it was the foreman's duty to give warning if anything went wrong with the bars as the motorcar was being moved up to the track. Felix Shaw, who had had many years experience in track work, testified to the same general effect as did Walton.

The demurrer to the evidence raised three questions, viz.: Did plaintiff assume the risk? Was plaintiff's injury due solely to his own negligence? and Were defendants negligent as negligence was submitted?

Plaintiff testified that he had worked on sections for various railroads for about fifteen years, and had worked on the section with foreman Walker for about six years prior to his injury; and "was familiar with what" had been done to the setoffs in placing the new ballast; that he had assisted in placing "motorcars back on the track by the use of lining bars" five different times, all in 1935; that, in each instance, the motorcar was placed back on the track by four men, "two men lifting and pushing the back end." In these cases, he said that, when the front wheels went over, the drop was only "a couple or three inches."

Plaintiff assisted in taking the motorcars off the track and in placing it on the setoff where he was injured, and therefore knew the condition of the setoff.

45 U. S. C. A., section 51, provides that "every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . ."

Section 54 of the act provides that "in any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

In ruling cases brought under the Federal Employers' Liability Act we are bound by the opinions and decisions of the Supreme Court of the United States. [Prior v. Williams, 254 U. S. 43, 41 Sup. Ct. 36, 65 L. Ed. 120; Rowe v. Missouri, Kansas & Texas Ry. Co., 339 Mo. 1145, 100 S. W. (2d) 480.] "In cases arising under the Federal Employers' Liability Act, the Federal courts hold that an employee, in entering upon a contract of employment, assumes all the risks and dangers ordinarily incident to his employment, and also the extraordinary risks caused by the employer's negligence which are obvious and fully known to the employee and appreciated by him, or so plainly observable that he must be presumed to know them." [Martin v. Wabash Ry. Co., 325 Mo. 1107, 30 S. W. (2d) 735, l. c. 742; McDaniel v. Chicago, R. I. & P. Ry. Co., 338 Mo. 481, 92 S. W. (2d) 118, l. c. 120, and cases there cited.]

In Williams v. Terminal Railroad Assn., 339 Mo. 594, 98 S. W. (2d) 651, "plaintiff (a section hand) was working with a section crew, engaged in cutting a four-foot piece from a steel rail eight or nine feet long. To do this, some of the men steadied the rail at each end with claw bars, the assistant foreman held a chisel against the rail, and another man struck it with a sledge hammer. While plaintiff was helping to steady the rail, a piece of steel flew into his eye when one of the men struck the chisel." It was held that the plaintiff assumed the risk.

In Blackley v. Powell et al. (4th Cir.), 68 Fed. (2d) 457, the plaintiff was a locomotive engineer, and, while preparing for a run at 2 A. M., fell into an unguarded turntable pit in the yards. The negligence charged was failure to maintain adequate lights, "and in placing the engine which plaintiff was first to inspect and then operate, so near the unguarded pit that plaintiff, in the course of his inspection, unwarily fell into it." It was held that the plaintiff assumed the risk. The court said (68 Fed. (2d) l. c. 459): ". . . the employee assumes not only the dangers normally and necessarily incident to his occupation, but also risks of another sort not naturally incident to the occupation but arising out of the failure of the employer to exercise due care to furnish a safe place to work, provided that the employee has become aware of the defect and the risk arising from it," citing Seaboard Air Line Ry. Co. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475.

In Heath v. St. Louis-San Francisco Ry. Co. (Mo. App.), 286 S. W. 148, plaintiff was a section hand and was injured from lifting while assisting in putting a motorcar on the track. The crew consisted of the foreman, and three men, including plaintiff. It was necessary to move the motorcar from the track so a train could pass. The negligence relied upon was failure to furnish a sufficient number of men, negligence of plaintiff's fellow servants in handling the motorcar so that most of the weight was thrown on plaintiff, and the negligence of the foreman in ordering plaintiff to do the work in which he was injured.

Plaintiff had worked on the section about twenty months prior to his alleged injury. The manner or method used in placing the motorcar on the track was described by the plaintiff as follows: "Part of us would lift one end of the car, while the rest of us would bear down on the other end like we were trying to balance it, then we would lift our end, while the other fellows would bear down on their end. When either end was lifted, it would be moved forward as far as it would go, then we would bear down on that end and lift the other end and move it forward."

It appears in the Heath case that the plaintiff was entirely familiar with the work he was doing when he was injured. He had had three and one-half years experience "in that kind of work," and that during all that time he handled motorcars such as the one he was assisting in placing on the track when injured. It was held that he assumed the risk and could not recover.

In Boyet v. Davis, 217 Mo. App. 513, 269 S. W. 413, plaintiff was a section hand. The section crew consisted of the foreman, and plaintiff, and two other men. Plaintiff was injured (ruptured) while assisting in removing a motorcar from the track. The negligence relied on was failure to furnish a sufficient number of men to do the work, negligence of the foreman in directing that the motorcar be removed under the circumstances existing, and negligence of plaintiff's fellow servants in failing to use reasonable care to assist him in removing the motorcar from the track. Plaintiff in that case described the manner of his injury as follows: "When the wheels dropped down the car ruptured me. The car made a sudden jar, sudden jerk, a sudden weight on me. It was when the car dropped down from the rails on the ties—that's when it caused me to be ruptured."

It appears in the Boyet case that the plaintiff had had many years experience in a section crew and was entirely familiar with placing motorcars on the track. And it further appears that he was entirely familiar with the capacities of the men with whom he worked as to their working qualities, etc. It was held that he assumed the risk and could not recover.

As stated, plaintiff in the present case, testified that the

south ends of the lining bars sank into the surface of the setoff. If such was the case, then the east bar was less likely to have moved forward, than if it had not sunk into the surface of the setoff. Also, it is contrary to physical law that the right front wheel of the 1000 pound motorcar, in the manner it was run up the bars, rear end lifted up, would have remained elevated on that part of the east lining bar extending beyond the rail, after the left front wheel had passed over the rail and down to the ballast. [Dunn v. Alton Railroad Co., 340 Mo. 1037, 104 S. W. (2d) 311, l. c. 314, and cases there cited.]

Under the rule of assumption of risk, as it prevails in dealing with cases under the Federal Employers' Liability Act, we are constrained to rule that plaintiff assumed the risk and cannot recover.

Reaching the conclusion stated, it will not be necessary to rule other assignments. The judgment should be reversed and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Hays, P. J.,* absent.